**Rowdy B. Meeks** (*pro hac vice granted*)
rowdy.meeks@rmlegalgroup.com
Rowdy Meeks Legal Group LLC
435 Nichols Rd., Suite 200
Kansas City, Missouri 64112
Tel: (816) 977-2741
Fax: (816) 875-5069
Kansas Bar No. 16068

**Derek C. Johnson, OSB 88234**
djohnson@jjlslaw.com
**Jennifer Middleton, OSB** 071510
jmiddleton@jjlslaw.com
Johnson Johnson Larson & Schaller, PC
975 Oak Street, Suite 1050
Eugene, Oregon 97401
Tel: (541) 484-2434
Fax: (541) 484-0882

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## MEDFORD DIVISON

| | | |
|---|---|---|
| **MICAH DUBEAU, DAVID DUBEAU and COREY GILE** | ) ) ) | Case No. 1:12-cv-01602-CL |
| On Behalf of Themselves And All Others Similarly Situated, | ) ) ) | MEMORANDUM OF LAW IN SUPPORT |
| Plaintiffs, | ) ) ) | OF THE PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS |
| vs. | ) ) | ACTION SETTLEMENT |
| **STERLING SAVINGS BANK and GOLF SAVINGS BANK** | ) ) ) | |
| Defendants. | ) ) | |

## I.    INTRODUCTION

Plaintiffs Micah DuBeau, David DuBeau, and Corey Gile ("Plaintiffs"), and Defendants Sterling Savings Bank and Golf Savings Bank ("Sterling")(all collectively as "Parties") have reached a class and collective action settlement of the wage and hour, and deduction claims of eligible class members employed by Sterling within the states of Oregon and Washington as Mortgage Loan Officers and other like exempt mortgage origination jobs ("MLOs").   The Settlement, which was completed only after the parties (1) exchanged comprehensive employment, payroll, timekeeping, and wage deduction records for the approximately 430 class members, and (2) conducted several rounds of extensive negotiations including an all-day

1

mediation in front of a well-respected class action mediator, is a fair, reasonable, and adequate resolution of a *bona fide* dispute, and this Court should thus preliminarily approve it.

The Settlement is the product of arms-length negotiations by experienced counsel and has the salutary effect of (1) providing substantial relief to Class members and (2) eliminating the risk both sides would bear if this litigation continued to resolution on the merits. The material terms of this settlement are set forth in the Settlement Agreement ("Settlement Agreement") that Plaintiffs have filed with this Motion. For these reasons, and the reasons more fully set forth below, Plaintiffs respectfully request that this Court: (1) grant preliminary approval to the proposed Settlement Agreement; (2) certify the proposed Settlement Classes; (3) appoint as Class Representatives Micah DuBeau, David DuBeau, and Corey Gile of the respective Settlement Classes set forth below and as Class Counsel Rowdy B. Meeks of Rowdy Meeks Legal Group LLC; (4) approve the proposed notice program; (5) set a date for the Fairness Hearing; and (6) set a date for Class Counsel to move for an award of attorneys' fees and costs.

## II.    STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

On September 6, 2012, Plaintiffs Micah DuBeau and David DuBeau, on behalf of themselves and all other similarly-situated persons, filed a Rule 23 class and Fair Labor Standards Act ("FLSA") collective action against Sterling to recover unpaid overtime and certain wage deductions in the United States District Court for the District of Oregon. *See* Complaint (Doc. 1). Plaintiffs Micah DuBeau and David DuBeau worked as MLOs in Medford, Oregon for Golf from about April 1, 2010 until Golf merged with Sterling and they then remained with Sterling until about May 3, 2012. *Id.* Plaintiffs subsequently added Corey Gile as a named Plaintiff and added Rule 23 class action claims under Washington law. (Docs. 24, 30). Plaintiff

Corey Gile worked as a MLO in Puyallup, Washington for Golf from about November 2009 until the Sterling merger and he then remained with Sterling until about November 2011. *Id.*

Plaintiffs and the proposed classes are MLOs who worked or work for Sterling in Oregon and Washington.  Plaintiffs claim that while they and others worked as MLOs, Sterling paid them at times on a commission-only and/or draw against commission basis which denied them minimum and overtime wages in violation of the FLSA, and Oregon and Washington state wage and hour laws.  *Id.*  Plaintiffs also claim that Sterling illegally deducted certain cost of doing business items from MLO wages including credit report fees, appraisal fees, Rapid Rescore fees, credit supplement fees, and other such fees ("Loan-in-Process" or "LIP" charges).  *Id.*  Four (4) former MLOs opted into the case in addition to the three Plaintiffs.  (Docs. 11, 19-21).

On December 7, 2012, Sterling answered the First Amended Complaint denying that they had illegally paid the MLOs; Sterling stated the MLOs were exempt from the minimum wage and overtime requirements under the outside sales exemption and other exemptions, and that the MLO wage deductions were valid under Oregon and Washington law, and the MLOs' written employment agreements with Sterling.  (Doc. 25); Ex. 1, Affidavit of Rowdy B. Meeks, ¶ 4.

The Parties then met and conferred regarding their Rule 26 and ADR requirements as required by this Court's Discovery and Pretrial Scheduling Order. (Doc. 4); Ex. 1, ¶ 5.  During this period and thereafter, the Parties exchanged substantial information including compensation, hours worked, and wage deduction data for all class members.  This substantial exchange of detailed information allowed both Parties to fully understand the strengths and weaknesses of their respective cases.  Further, Plaintiffs' counsel conducted in depth interviews of Plaintiffs, opt-ins, and many putative class members to gain further information about Sterling's pay practices and potential damages.  *Id.* at ¶¶ 6-8.

After careful review and analysis of this information, the Parties then began settlement negotiations and decided to mediate. On February 18, 2013, the Parties attended a mediation in San Francisco, California before respected class action mediator, retired Chief Magistrate Judge Edward Infante. The Parties worked fervently before and during the mediation, and they ultimately agreed to settle the claims in the Lawsuit after a full day mediation. *Id.* at ¶¶ 6-9.

Plaintiffs have not yet moved for FLSA collective action or Rule 23 class action certification of their Oregon and Washington state law claims. The Parties now request this Court preliminarily approve the Parties' settlement of Plaintiffs' class action claims under Rule 23 and conditionally certify this case as a FLSA collective action.

## III.    TERMS OF THE PROPOSED SETTLEMENT.

### A.    Terms of the Proposed Settlement and Distribution.

Under the terms of the Settlement Agreement, Sterling will provide significant benefits to a class of approximately 430 MLOs who worked for Sterling, 69 MLOs who worked in Oregon and 361 MLOs who worked in Washington (the "Class Members"). Motion Ex. A, Settlement Agreement ¶ 6-7. The Classes and respective Class Representatives for settlement purposes are:

**FLSA Class.** Mortgage Loan Officers and other like exempt mortgage origination employees who are the subject of this lawsuit and who worked for Defendants in Oregon and Washington within three (3) years prior to opting into this lawsuit under the FLSA by filing consents to join. Class Representative is Micah DuBeau.

**Oregon Rule 23 Wage Hour Class.** Mortgage Loan Officers and other like exempt mortgage origination employees who are the subject of this lawsuit and who were employed by Defendants in Oregon from September 6, 2010 to the date of this order. Class Representative is Micah DuBeau.

**Oregon Rule 23 Deduction Class.** Mortgage Loan Officers and other like exempt mortgage origination employees who are the subject of this lawsuit and who were employed by Defendants in Oregon from September 6, 2006 to the date of this order and who had LIP charges or Catch-Up Taxes deducted from their wages.

Class Representative is David DuBeau.

**Washington Rule 23 Wage Hour Class.** Mortgage Loan Officers and other like exempt mortgage origination employees who are the subject of this lawsuit and who were employed by Defendants in Washington from September 6, 2009 to the date of this order. Class Representative is Corey Gile.

**Washington Rule 23 Deduction Class.** Mortgage Loan Officers and other like exempt mortgage origination employees who are the subject of this lawsuit and who were employed by Defendants in Washington September 6, 2009 to the date of this order and who had LIP Charges or Catch-Up Taxes deducted from their wages. Class Representative is Corey Gile.

To settle the Class' federal, and Washington and Oregon state wage and hour, and wage deduction claims, Sterling has agreed to establish a fund, inclusive of attorneys' fees, expenses, and costs, the Class Representatives' service awards, and settlement administration costs of $1,3750,000 (the "Settlement Fund"). *Id.*, ¶ 6.

After the Settlement Fund is reduced by Plaintiffs' counsel's attorneys' fees, expenses and costs, the Class Representatives' service awards, and settlement administration costs, the Settlement Fund shall be distributed to Class Members based upon an equitable formula that takes into account each Class Member's (1) return of a claim form to participate in the Lawsuit; (2) number of full weeks of Class Period employment; (3) yearly compensation up to $100,000 during the Class Period; and (4) amount of LIP Charges deducted from his/her wages during the relevant class period. *Id.*, ¶ 7. Each payment will be allocated as 50% wages, and 50% interest and liquidated damages. *Id.*, ¶ 14.4. All Class Members will receive a minimum of $100. *Id.*, ¶ 7.1. Based upon the existing data, Plaintiffs estimate that eligible Class Members will be allocated almost $3,000.00 on a *per capita* basis.[1] Any unclaimed or uncashed settlement checks will be held open for 180 days with any unclaimed funds reverting to Sterling. *Id.* ¶ 14.3.

B.     **Class Notice and Settlement Administration Costs.**

---

[1] This *per capita* estimate is derived by dividing the Settlement Fund by the total number of Class Members.

The Parties have agreed that a third party administrator, BMC Group, will administer the Settlement ("Settlement Administrator").  The modest cost of Settlement Administrator of $16,000 will come out of the Settlement Fund to mail Class notice and claims forms, calculate settlement payments, mail them, and issue the required tax forms.  The Parties have agreed to cooperate to ensure that the Settlement Administrator has all of the information reasonably necessary to administer the Settlement.  *Id.*, ¶ 11.3, 11.4, 20.

The Settlement Administrator will send to each Class Member, by first-class mail, a Notice (attached as Exhibit B to the Settlement Agreement) informing putative class members of their right to participate in the Settlement and the approximate amount they are entitled to receive.  *Id.* at ¶ 11.7.  The Notice generally follows the form of class notice the Federal Judiciary Center endorses and explains in clear terms (1) the nature of the Settlement and the claims released, (2) the approximate amount each eligible Class Member is allocated if he or she participates in the Settlement, and (3) the requirement that Class Members must exclude themselves pursuant to the procedure outlined in the Notice if they do not wish to participate.  *Id.*

Any Class Member who properly and timely opts-out of the Settlement by submitting a valid exclusion according to the procedure set forth in the Notice will not be paid any amount, and will not release any federal, or Oregon and/or Washington state law claims.  The procedures for opting-out are those commonly used in class action settlements, are straightforward, and are clearly described in the Notice.  *Id*. at ¶ 13; *see also* Ex. B to Settlement Agreement.

Upon final approval of the Settlement, Class Members who return a claim form and do not exclude themselves from the Settlement will release all federal, and Oregon and/or Washington state wage and hour, and wage deduction claims against Sterling.  *Id.* at ¶ 13.1. Class Members who do not exclude themselves and do not return a claim form will release all Oregon and/or Washington state wage and hour, and wage deduction claims against Sterling, but

will not release their federal wage and hour claims, if any. *Id.* Such releases will be effective as of the date of final approval of the Settlement by this Court. *Id.*

### C.    Class Representatives' Service Awards

Pursuant to the terms of the Settlement Agreement, Plaintiffs' counsel will apply for a $7,500.00 each to the three Class Representatives for their respective efforts in prosecuting this case, including retaining counsel, reviewing and authorizing the filing of the Complaints, reviewing massive information from counsel, and participating in settlement negotiations. This level of service award is commensurate with awards in other wage and hour cases. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litig.,* MDL C-07-1841 EMC, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011)(approving incentive awards of $7,500 to named plaintiffs). An application for these awards will be made separately to the Court in the final approval process. These service awards are in addition to any Settlement Payments they may receive. Sterling does not oppose this application. Ex. A, Settlement Agreement, ¶ 8.

### D.    Class Counsel Fees and Expenses

Under the terms of the Settlement, Class counsel may apply for up to one-third (33.3%) of the Settlement Fund as attorneys' fees, and for a separate award for costs and expenses. *Id.*, ¶ 9. Although this percentage represents a slight departure from the Ninth Circuit 25% "benchmark," Ninth Circuit courts have recognized the exact percentage depends upon the facts of the case, and in "most common fund cases, the award exceeds the benchmark." *Knight v. Red Door Salons, Inc.,* 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009); *Cicero v. DirecTV, Inc*., EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ("Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in

which the common fund is relatively small")(*internal citations omitted*).2

An application for such fees will be made separately to this Court for approval, demonstrating the relevant factors for reasonableness of a fee award, and a full analysis of the fairness of counsel's request can be made at that time.

## IV.    ARGUMENT.

### A.    Preliminary Approval of the Proposed Settlement is Appropriate.

#### 1.    The Process for Approving a Rule 23 Class Settlement.

The Ninth Circuit favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."); *see also Speed Shore Corp. v. Denda,* 605 F.2d 469, 473 (9th Cir. 1979)("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation.").   Indeed, the Ninth Circuit "has long deferred to the private consensual decision of the parties" regarding the amount of settlement and "put[s] a good deal of stock in the product of an arms-length non-collusive negotiated resolution." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009).

Where, as here, the Parties propose to resolve class litigation through a class-wide settlement, they must obtain the Court's approval.  *See* Fed. R. Civ. Proc. 23(e); *Medearis v.*

---

2 *See also Franco v. Ruiz Food Products, Inc.,* 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D.Cal. Nov. 27, 2012); *Romero v. Producers Dairy Foods, Inc.,* 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) (approving award of one-third of settlement fund in wage-and-hour case litigated for over two years); *Singer v. Becton Dickinson & Co.,* 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) (stating that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases" and collecting cases); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 492 (E.D. Cal. 2010) (listing five wage-and-hour cases where 33.33% award was approved and approving same).

*Oregon Teamster Employers Trust*, CV. 07-723-PK, 2009 WL 1788183, *1 (D.Or. June 19, 2009). Approval of a class settlement involves a two-step process. First, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004). If the preliminary evaluation of the proposed class settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the proposed settlement. *Id. at* § 21.633.

At final approval, after Class Members have been notified of the proposed settlement and had an opportunity to comment, the court will be called upon to fully appraise whether the parties negotiated a settlement that is fair, reasonable, and adequate to the class.    At this preliminary approval stage, however, the court determines only whether the settlement falls "within the range of possible approval, such that it is worthwhile to give the class notice of the settlement and proceed with a formal fairness hearing." *In re M.L. Stern Overtime Litigation,* No. 07-CV-0118-BTM (JMA), 2009 WL 995864 (S.D. Cal. April 13, 2009); *see also White v. Experian Solutions Info. Inc.,* SACV05-1070DOC(MLGX), 2009 WL 1615985 (C.D. Cal. June 9, 2009) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")(*citations omitted*).

## 2.    The Proposed Settlement Enjoys A Presumption of Fairness.

The settlement was negotiated at arm's-length by counsel well versed in class litigation and is therefore entitled preliminarily to "a presumption of fairness." *Gribble v. Cool Transports Inc.,* No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008); 4

*Newberg on Class Actions* at § 11.41. The Parties have engaged in mediation with a very well-respected class action mediator which ultimately resulted in a settlement. Ex. 1, Meeks Aff. at ¶ 9. Further, the Parties have exchanged significant Class Member data and analyzed that data. In fact, counsel for both parties have reviewed and analyzed employment, pay, time entry, and wage deduction data for Class Members in order to estimate a fair and reasonable recovery for the class. *Id.* at ¶ 6-8. The unique aspect about this litigation is that Sterling initially classified its MLOs as exempt, Sterling then re-classified its MLOs as non-exempt for about 13 months and required them to track their work hours including any overtime hours worked, and Sterling then again re-classified its MLOs as exempt. Thus, the Parties have data regarding how much overtime Class Members' work which lends itself to a fair estimation of the Class Members' overtime and minimum wage claims.

Consequently, Plaintiffs' counsel has negotiated the proposed settlement with ample knowledge as to the strengths and weakness of this case, the amounts necessary to compensate Class Members for their damages, and the benefits of the proposed settlement under the circumstances of this case. Although Plaintiffs believe that this case has significant merit, there are always risks inherent in further litigating this case through trial. A wage and hour class action involving analysis of FLSA and state law exemptions, and wage deductions is complex, and such complexity adds to the risk of confusion if this case were to be tried in front of a jury.

Sterling has shown every sign of vigorously contesting Plaintiffs' claims in this litigation. Given the risk of trial, particularly of complex issues such as these, and given the monetary relief offered to the class by the proposed settlement, it is fair and reasonable for Plaintiffs and the Class to avoid that risk through implementation of this settlement. Both Plaintiffs' counsel and Defendants' counsel are experienced employment and class action

attorneys, and have used their experience and expertise in fashioning a Settlement Agreement that they believe is reasonable and fair to both Parties and to the Class.

### 3.    The Settlement Meets the Rule 23(a) and (b)(3) Requirements.

Rule 23 affords this Court with "broad discretion to determine whether a class should be certified." *Armstrong v. Davis,* 275 F.3d 849, 871 n. 28 (9th Cir. 2001).   Before granting preliminary approval of a settlement, the Court should determine that the proposed Class is a proper class for settlement purposes. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual*, § 21.632.   A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and one subsection of Rule 23(b). *Lozano v. AT&T Wireless, Servs, Inc.,* 504 F.3d 718, 725 (9th Cir. 2007).   When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith v. Sprint Commc'ns Co.,* 387 F.3d 612, 614 (7th Cir.2004) (quoting *Amchem Prods.,* 521 U.S. at 620).   Here, the proposed Classes meet all of the requirements of Rule 23(a) and satisfy the requirements of Rule 23(b)(3).

#### a.    Numerosity

Rule 23(a)(1) requires a putative class "must be so numerous that joinder of all members is impracticable." *Phelps v. 3PD, Inc.,* 261 F.R.D. 548, 555 (D.Or.2009)(quoting Rule 23(a)(1)). Although there is no bright line test, a class of forty generally satisfies numerosity. *Oregon Laborers Employer Health & Welfare Trust Fund v. Phillip Morris,* 188 F.R.D. 365, 372 (D.Or. 1998).   The Classes included in the Settlement here consist of about 69 MLOs in the Oregon classes and 361 MLOs in the Washington classes.   Thus, the Classes here meet numerosity.

#### b.    Commonality

The proposed Classes also meet the commonality requirement of Rule 23(a)(2), which requires that "there are questions of law or fact common to the class." Courts construe Rule 23(a)(2) "permissively." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). "There need be only a single issue common to all members of the class." *Phelps,* 261 F.R.D. at 555. Here, the overarching questions of fact and law that are common to each Class include (1) whether Sterling misclassified the MLOs as exempt employees (Oregon and Washington Wage and Hour Classes); (2) whether Sterling failed to pay minimum wage and overtime to the MLOs for all hours worked (Oregon and Washington Wage and Hour Classes); and (3) whether Sterling complied with Oregon and Washington law respectively when Sterling deducted LIP Charges from MLOs' wages (Oregon and Washington Deduction Classes). These common questions satisfy the commonality requirement. *See Id. at 555-57* (commonality present for class on unpaid wages and illegal deductions claims); *Chavez v. Don Stoltzner Mason Contractor, Inc.,* 272 F.R.D. 450, 454 (N.D.Ill.2011) (finding commonality where defendants had a common practice of underpaying employees for time worked over forty hours per week).

### c.      Typicality

The typicality element requires that the claims or defenses of the representative party be "typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). A class representative's claims "are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. "[A] Plaintiff's claim is typical if it arises out of the same even or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based upon the same legal theory." *Phelps,* 261 F.R.D at 557 (*quoting Sorenson v. Concannon,* 893 F.Supp. 1469, 1479 (D.Or. 1994)).

Here, like other Oregon Wage Hour Class Members and Oregon Deduction Class

Members, Class Representatives Micah DuBeau and David DuBeau were each a MLO in Oregon whose job it was to originate mortgages during the relevant time frame.   Similarly, Class Representative Corey Gile was a MLO in Washington whose job it was to originate mortgages during the relevant time frame just like all Washington Wage Hour and Deduction Class Members respectively.   Moreover, the interests of Class Representatives David DuBeau, Micah DuBeau, and Corey Gile arise out of Sterling's alleged standardized misconduct of (1) failing to compensate him and the respective Oregon and Washington Wage Class Members as required by the wage and hour laws, and (2) illegally deducting LIP Charges from their and the respective Oregon and Washington Deduction Class Members' wages. As such, the typicality requirement is satisfied. *See Phelps,* 261 F.R.D. at 557-58 (finding typicality where plaintiffs' claims arise out of defendant's conduct of failing to compensate class members and illegally deduct their wages).

### d.    Adequacy

Rule 23(a)(4) requires that Class Representatives Micah DuBeau, David DuBeau, and Corey Gile be able to "fairly and adequately protect the interests of the class[es]." To determine if they can do so here, courts examine whether they (1) have no conflicts of interest with the proposed classes; and (2) have counsel that is competent and qualified. *Phelps,* 261 F.R.D at 558 (citations omitted).   Here, the requirements of Rule 23(a)(4) are easily satisfied.   There is no indication that Class Representatives' interests are antagonistic to those of the respective Classes. The Class Representatives have interests in harmony with the respective Classes, and have pursued those interests and assisted counsel with settlement negotiations.

Furthermore, Plaintiffs have retained counsel with significant experience in prosecuting class actions and complex cases, and who demonstrated their zealousness by litigating a complicated case to an excellent result for the class.   Ex. 1 Meeks Aff., ¶ 11-12.   Moreover,

Rowdy Meeks Legal Group LLC will continue to fairly and adequately protect the interests of the class as the case moves through the notice process and ultimately through final approval. Plaintiff's counsel thus readily meets the Rule 23(a)(4) standard.

### e.    Predominance and Superiority

Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To make this determination, courts consider (A) "the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3); *Phelps,* 261 F.R.D. at 558-59.

As to predominance, "[t]he Rule 23(b)(3) predominance inquiry testes whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Alchem,* 521 U.S. at 623. Plaintiffs need not establish that no individual issues exist, only that the class issues predominate and that a class action is superior. *Phelps,* 261 F.R.D. at 559 (citations omitted). Plaintiffs' allegations here show that common questions predominate over questions affecting only individual members. Common to the Oregon and Washington Wage Hour Classes here is the central issue of whether Sterling engaged in the uniform practice of failing to pay minimum wage and overtime. Similarly, common to the Oregon and Washington Wage Deduction Classes is the central issue of whether Sterling violated Oregon and Washington state law by deduction LIP Charges from MLO wages. *See Id.* at 582 (Oregon statutory deduction

claims "will be proved largely with common evidence").

Likewise, Plaintiffs' allegations here satisfy the superiority element. Their class action claims here promote efficiency to decide common questions given the increased expenses, discovery duplication, and potential for individual causes of action should each of the 460 MLOs pursue individual claims. Accordingly, Plaintiffs satisfy superiority here.

For all of the above reasons, the proposed Settlement satisfies the class action certification requirements of Rule 23(a) and 23(b)(3).

### 4.    A Review of the Applicable Favors Approval of the Settlement.

Because this case qualifies for class action certification, this Court will approve the Settlement if it is "fundamentally fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 2009). In determining whether to preliminarily approve a settlement, courts balance several factors including: 1) the strength of plaintiffs' case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the risk of maintaining class action status throughout the trial; 4) the amount offered in settlement; 5) the extent of discovery completed, and the stage of the proceedings; 6) the experience and views of counsel; 7) the presence of a governmental participant; and 8) the reaction of the class members to the proposed settlement. *Medearis, 2009 WL 1788183 at *3* (*citing Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003)). This Court "may consider some or all of the [above] factors," but is not required to reach an ultimate conclusion on the merits of the dispute "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Rodriquez,* 563 F.3d 958, 963-64 (citations omitted).

Here, the Parties' proposed Settlement easily satisfies each of these elements.

### a.    The strength of plaintiffs' case

Although Plaintiffs believe that this case has significant merit, there are always risks inherent in further litigating this case through trial.  A wage and hour class action involving analysis of FLSA and state law exemptions, and wage deductions is complex, and such complexity adds to the risk of confusion if this case were to be tried in front of a jury.  Further, Sterling has shown every sign of vigorously contesting Plaintiffs' claims in this litigation.  The Ninth Circuit has noted the difficulty that loan officers face to maintain class action status to recover overtime claims under state wage and hour law.  *See Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 944-45 (9th Cir. 2009)(upholding denial of class certification of loan officers based upon outside sales exemption which Sterling has asserted here); *In re Wells Fargo Home Mort. Overtime Pay Litigation,* 571 F.3d 953, 957-58(9th Cir. 2009)(mere fact that employer treats loan officers as exempt does not give rise to class action certification).  Finally, the Class Members signed employment agreements with Sterling which provide that if the Class Members lose litigation related to the wage deductions, they "shall be" responsible for the attorney fees and expenses Sterling incurs in defending such litigation.  Ex. 1, Meeks Aff., ¶ 9.

Here, the strength of Plaintiff's claims is reflected in the value of the settlement – a substantial amount to reflect the minimum wage and/or overtime compensation, and wage deductions Plaintiffs and Class Members could have expected to receive at trial had they prevailed on their claims.  Plaintiffs and many Class Members will recover more than $2,000 in the Settlement after payment of attorneys' fees, costs, and expenses.  Liability is a closely contested issue here with Sterling arguing (1) through employment records that MLOs qualify for the outside sales exemption and (2) through time records that MLOs recorded all work time, either of which if true, would render the MLOs recovering no minimum wage or overtime compensation.  Further, Sterling argues that Class Members' employment agreements authorize

the wage deductions at issue or at least provide a right of setoff for them.   Thus, this factor militates in favor of preliminary approval.

### b.   The risk, expense, complexity, and likely duration of further litigation.

Absent settlement, Sterling would continue to vigorously defend the case.   Although Plaintiffs are confident that they would have prevailed on a motion for class certification, a trial on damages would still have been required.   This trial is years away; it would have significantly delayed the resolving this case and thus payment of wages to Class Members. Plaintiffs and the Class Members may also have been required to confront appeals.   The additional litigation would increase the expense of the case, but would not have reduced the risks for the Class.   As such, the remaining burden, expenses, and risks for Plaintiffs and the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense so this factor favors settlement.   *Rodriquez,* 563 F.3d at 966 (settlement favored where case is complex, expensive and lengthy to try, and appeals may stretch class recovery to years away).

### c.   The risk of maintaining class action status throughout the trial

As cited above in subsection a, there is Ninth Circuit precedent and thus substantial risk that the Oregon and Washington state wage and hour claims would not maintain class action status through trial.   Accordingly, this factor favors settlement.

### d.   The amount offered in settlement

Sterling has agreed to pay $1,375,000 to settle this case which is a substantial amount. Plaintiffs and most Class Members will individually recover almost $2,000 after deduction of fees and expenses which is a real recovery.   Thus, this factor favors settlement.

### e.   The extent of discovery completed and stage of the proceedings

As explained above, while no discovery was completed, this complex case resolved only after hard fought litigation and an all-day mediation which involved detailed employment information for all Class Members including compensation, time, and deduction data.  The stage of this litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement. Ex. 1, Meeks Aff., ¶¶ 7-10.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriquez,* 563 F.3d at 967 (citations omitted).

### f.    The experience and views of counsel

Class Counsel is experienced in the litigation, certification, trial, and settlement of wage and hour cases, including nationwide class action cases.  *Id*.; Ex. 1, Meeks Aff. ¶ 12.  Class Counsel believes that the Settlement which provides substantial relief to Class Members and in exchange for a narrow, limited release is fair, adequate, and reasonable.  *Id*.

### g.    The reaction of the class members to the settlement.

The Class Representatives support the Settlement, as do Class Counsel and Sterling. At this preliminary stage, no person has contacted Class Counsel with any opposition to the settlement, which provides an excellent result to all class members.  Ex. 1, Meeks Aff. ¶ 12.

Based upon the above, the Parties' Settlement is "fair, reasonable, and adequate," and easily satisfies the Rule 23(e) so this Court should preliminarily approve it.

### B.  The Court Should Approve the Proposed Form and Method of Class Notice.

Rule 23(e) requires that notice shall be given to all members of the class. Fed. R, Civ. P. 23(e). For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). "[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself

from the class." *Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir.1994).  Rule 23(c)(2)(B), however, does not require actual notice. *Id.*  Notice by mail is sufficient. *Id.*

The contents of the notice must "clearly and concisely state in plain, easily understood language:" 1) the nature of the action; 2) the definition of the class; 3) the class claims, issues, or defenses; 4) that a class member may enter an appearance through an attorney; 5) that the court will exclude from the class any member who requests exclusion; 6) the time and manner to opt out of the class; and 7) the binding effect of a class judgment. Fed.R.Civ.P. 23(c)(2)(B); *Medearis,* 2009 WL 1788183 at *4.  In addition, a notice regarding a class settlement should: 1) describe the essential terms of the settlement; 2) disclose benefits accorded to the class representatives; 3) provide information related to attorney fees; 4) indicate the time and place of the settlement approval hearing; 5) explain the procedure for disbursing settlement funds; 6) provide enough information to enable individual class members to estimate their recoveries; and 7) prominently display the address and phone number of class counsel and how to make inquiries.  *Id.* (citations omitted).

Here, the individual Notice for the Classes follows the template approved by the Federal Judicial Center, and will be mailed to the Class Members at their last known addresses as reflected in Defendants' records.  The Notice informs Class Members of the terms and provisions of the Settlement Agreement; the relief the Settlement will provide; the date, time, and place of the final approval hearing; and the procedures and deadlines for opting-out of the Settlement, or submitting comments or objections.  *See* Settlement Agreement, Ex. B.  The proposed Class Notice also advises Class Members that Plaintiffs' counsel have pursued the lawsuit on a contingent basis, and have not received any payment of fees or any reimbursement of their out-of-pocket expenses.  *Id.*  Additionally, the proposed Class Notice advises Class Members that Plaintiffs' counsel will apply to the Court for an award of fees in an amount not to

exceed one-third of the Settlement Fund plus expenses, and a service award for the Class Representatives in an amount not to exceed $7,500.00 each.  *Id.*

As the highest level of class notice recognized by case law, the proposed Class Notice clearly comports with due process and meets the above requirements. The Class Notice is accurate and fully informs Class Members of the material terms of the Settlement and their rights pertaining to it.   The Parties' proposed notice procedure meets the requirements of Rule 23, and accordingly Plaintiffs request that the Court approve the Notice forms and protocol.

**C.  Schedule of Events.**

Entry of the proposed preliminary approval order requires the Court to set various dates and deadlines governing the settlement process, including the date for the Fairness Hearing.  The following is the parties' proposed schedule should the Court grant preliminary approval:

| DEADLINE | EVENT |
|---|---|
| 60 days from date of mailing of Notice | Last day for Class Members to opt-out of the Settlement. |
| 60 days from date of mailing of Notice | Last day for Class Members to object to the Settlement. |
| 21 days before Final Fairness hearing | Last day to file papers in support of application for attorneys' fees, costs and service award. |
| 7 days before Final Fairness hearing | Last day to file papers in support of the Settlement and in response to any Class Member's objections. |
| To be determined by the Court | Fairness hearing. |

## V.     THE PARTIES STIPULATE TO FLSA CONDITIONAL CERTIFICATION.

For settlement purposes, the Parties stipulate to conditionally certify the FLSA class.  *See* p. 4 *infra*.  Based upon the above, Plaintiffs have demonstrated that MLOs are "similarly situated" and thus satisfy the "fairly lenient standard" to conditionally certify the above class so that notice can issue.  *See, e.g., White v. Rakhara Mushroom Farm Corp.,* No. CV 08-198-SU, 2009 WL 971857 (D.Or. April 8, 2009).

**VI.    CONCLUSION.**

For all of the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval to the proposed Settlement; appoint as Class Representatives Micah DuBeau, David DuBeau, and Corey Gile of the respective Settlement Classes; appoint as Class Counsel Rowdy B. Meeks of Rowdy Meeks Legal Group LLC; enter the Order attached as Exhibit A to the Settlement Agreement; and schedule a fairness hearing on final Settlement approval as the Court's calendar permits.


Respectfully submitted,                        Respectfully submitted,

 */s/ Rowdy B. Meeks*                          /s/ *Derek C. Johnson*
Rowdy B. Meeks, Kansas Bar Number 16068        Derek C. Johnson, OSB #88234
*Pro Hac Vice Motion granted*

**ATTORNEYS FOR PLAINTIFF**


<u>**Certificate of Service**</u>

I hereby certify that a true and correct copy of the above was sent on <u>March 19, 2013</u> pursuant to the service requirements of the ECF/CM for the District of Oregon which will notify all counsel of record.


  /s/ Rowdy B. Meeks_____
Rowdy B. Meeks, Attorney for Plaintiffs


21