IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MICAH DUBEAU, DAVID DUBEAU,
COREY GILE, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

        v.

STERLING SAVINGS BANK and
GOLF SAVINGS BANK,

                Defendants.

Civ. No. 1:12-cv-01602-CL

ORDER

CLARKE, Magistrate Judge.

This case comes before the court on a Motion for Final Approval of the Class and

Collective Action Settlement (#85), as well as motions for attorney fees, expenses, and service

awards (#79), all filed by Plaintiffs Michah Dubeau, David Dubeau, and Corey Gile. The

motions are unopposed by the defendants, Sterling Savings Bank and Golf Savings Bank. Chris

Anderson, an unnamed member of the plaintiffs' class and collective has filed an objection to the

settlement, as well as a motion to intervene (#66). I held a fairness hearing on August 13, 2013, and, for the reasons below, the Motion for Final Approval of the Settlement (#85) and the motions for attorney fees, expenses, and service awards (#79) are GRANTED. The motion to intervene (#66) is DENIED.

## BACKGROUND

Plaintiffs represent a class of Mortgage Loan Officers (MLOs) employed by Golf Savings Bank, and then Sterling Savings Bank, in Oregon and Washington. Plaintiffs Micah DuBeau and David DuBeau worked as MLOs in Medford, Oregon for Golf from about April 1, 2010 until Golf merged with Sterling and they then remained with Sterling until about May 3, 2012. Plaintiff Corey Gile worked as a MLO in Puyallup, Washington for Golf from about November 2009 until the Sterling merger and he then remained with Sterling until about November 2011.

Plaintiffs claim that while they and others worked as MLOs, Sterling paid them at times on a commission-only and/or draw against commission basis which denied them minimum and overtime wages in violation of the Fair Labor Standards Act (FLSA), and Oregon and Washington state wage and hour laws. Plaintiffs also claim that Sterling illegally deducted certain cost of doing business items from MLO wages including credit report fees, appraisal fees, Rapid Rescore fees, credit supplement fees, and other such fees ("Loan-in-Process" or "LIP" charges). Despite the fact that Sterling denied, and still denies, any liability for these claims, the parties entered into settlement negotiations, and ultimately attended a mediation in San Francisco, California before respected class action mediator, retired Chief Magistrate Judge Edward Infante.

On May 6, 2013 the Court preliminarily approved the settlement submitted by the parties as fair, adequate, and reasonable, and conditionally certified the FLSA and Rule 23 Classes for

purposes of settlement and notice to the classes. Following dissemination of the Class notice,

Class members were given an opportunity to request exclusion from the class, or comment or

object to the Settlement Agreement or the Class counsel's request for fees, expenses, and service

awards for the named plaintiffs. On August 13, 2013 a fairness hearing was held, at which the

Court heard arguments from the parties, as well as from objector and proposed intervenor Chris

Anderson.

**DISCUSSION**

An agreement to settle a class action is not effective unless the court approves it after a

fairness hearing. Fed. R. Civ. P. 23(e). Under Rule 23(e)(2), "If the proposal would bind class

members, the court may approve it only after a hearing and on finding that it is fair, reasonable,

and adequate." The district court has discretion in approving the proposed settlement of a class

action. Rodriguez v. West Publ'g Corp., 563 F.3d 948, 963-64 (9th Cir. 2009). When evaluating

the fairness of a settlement, the Ninth Circuit "has long deferred to the private consensual

decision of the parties." Rodriguez, 563 F.3d at 965. When, as here, the parties have entered

into a settlement agreement prior to class certification, the Court has an obligation to "peruse the

proposed compromise to ratify both the propriety of the certification and the fairness of the

settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

**I.      Certification of the Class and Collective**

Rule 23 affords this Court with "broad discretion to determine whether a class should be

certified." Armstrong v. Davis, 275 F.3d 849, 871 n. 28 (9th Cir. 2001). A plaintiff seeking class

certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality

and adequacy of representation—and one subsection of Rule 23(b). Lozano v. AT&T Wireless

Servs., Inc., 504 F.3d 718, 725 (9th Cir. 2007). When "confronted with a request for settlement-

only class certification, a district court need not inquire whether the case, if tried, would present

intractable management problems, for the proposal is that there be no trial." Smith v. Sprint

Commc'ns Co., 387 F.3d 612, 614 (7th Cir.2004) (quoting Amchem Prods., 521 U.S. at 620).

The Court conditionally certified the Classes in its preliminary approval of the settlement, and, after a full consideration of the factors above, finds no reason no reason to alter its assessment.

## II.    Final Approval of the Settlement Agreement

After determining whether a class exists, the court's task in evaluating such a settlement is limited to determining "that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Rodriguez, 563 F.3d at 965 (citations and quotation marks omitted). The district court should consider the following factors in evaluating a proposed settlement:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Id. at 963 (quoting Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003))

After considering these factors the Court finds that counsel, with Judge Infante's help as mediator, negotiated an arms-length settlement agreement that is fair, reasonable, and adequate. Sterling has agreed to pay $1,375,000 as the total settlement fund, without admitting liability. Notice was sent to Class members via certified mail. The notice described the Settlement and Classes, contained an estimate of their recovery, and provided the opportunity to opt-out or object. 98.7% of the Class received the notice; only 7 notices packets were undeliverable. 290 Class members returned a claim form and will receive a monetary recovery under the settlement.

Only one Class member, Gregory Sifferman, has opted out. One Class member, Chris Anderson, objects to the settlement. She raises issues relating to the amount of attorney fees and

service awards requested, as well as the provision that the unused portion of the settlement fund will revert back to Sterling.

The Court, having reviewed the Declarations and arguments submitted in support of the parties' Motion for Final Approval of Class Action Settlement, as well as the objection submitted by Ms. Anderson, reaffirms its earlier, preliminary finding that the settlement terms are fair and reasonable.

## III.   Plaintiffs' Petition for Attorney Fees and Costs is Granted

In this case, Plaintiffs, through counsel, move for attorney fees of 25% of the Settlement Fund (or $343,750); litigation expenses and costs of $11,533.49 and $16,000 for settlement administration expenses of third-party administrator BMC Group; and service awards to each of the three named plaintiffs of $2,500. The defendants do not object to the requested fees and expenses. One Class member, Ms. Anderson, objecting to the settlement as discussed above, also objects to the requested fees and expenses.

### A.  Fees

In common-fund class actions, the settlement or award creates a fund for distribution to a class. The district court has discretion to use either a percentage or lodestar/multiplier method to determine an appropriate award of attorneys' fees to the prevailing party in such an action. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir.1998) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295 (9th Cir.1994)). The Ninth Circuit has established 25% of the common fund as a benchmark award for attorneys' fees under the percentage method. Id. (citation omitted). The district court, however, "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be indicated." In re Pac. Enter. Sec. Litig., 47 F.3d 373, 379 (9th Cir.1995).

Plaintiffs' counsel seeks an award of 25% of the Settlement Fund. While Ms. Anderson has filed an objection, she states that she objects to an award of 33.3%, which is not the amount

actually requested. No compelling argument was made to dispute the fairness of the 25% fee requested. The Class Notice informed Class Members that attorney fees would be requested, up to 33%, but no other member objected. Especially considering the successful outcome for the Class and Collective in this case, the Court finds no reason to adjust the benchmark percentage. The requested fee is fair, reasonable, and appropriate.

### B. Costs and Expenses

Under the FLSA, "costs ['of the action'] include reasonable out of pocket expenses." Robledo v. Orellana, 2012 WL 442122, at *3 (D.Or. Feb. 10, 2012) (citing Van Dyke v. BTS Container Serv., Inc., 2009 WL 2997105, at *2 (D.Or. Sept.15, 2009) (further citations omitted)). "Costs of the action" can include costs beyond those normally allowed under Fed.R.Civ.P. 54(d) and 28 U.S.C. §1920." Id. (citations omitted). Further, costs and expenses which "have been reasonably and necessarily incurred . . . are recoverable from the proceeds of the Common Fund." Rausch v. Hartford Financial Services Group, 2007 WL 671334, at *2 (D.Or. Feb. 26, 2007) (citing In re Media Vision Tech. Sec. Litig., 913 F.Supp. 1362, 1366 (N.D.Cal. 1996).

Here, Class Counsel seeks reimbursement for $11,533.49 in costs and expenses, as well as payment of $16,000 from the Settlement Fund to BMC Group to administer the settlement. As with the requested attorney fees, the Class Notice informed Class Members that Plaintiffs' Counsel would recover costs and expenses from the Settlement Fund. No Class Member objected to any of these expenses, and the Court finds them reasonable and relevant to the litigation.

### C. Service Awards

The trial court has discretion to award incentives to the class representatives. See Mego Fin'l Corp. Sec. Litig. v. Nadler, 213 F.3d 454, 463 (9th Cir.2000). The criteria that courts have considered when determining whether to make an incentive award and the amount of the award include: (1) the risk to the class representative, both financial and otherwise, in commencing the

case; (2) the notoriety and personal difficulties encountered by the class representative; (3) the

amount of time and effort spent by the class representative; (4) the duration of the litigation; and

(5) the personal benefit or lack thereof enjoyed by the class representative as a result of the

litigation.  See, e.g., Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294, 299 (N.D. Cal.

1995).

Named plaintiffs seek an award of $2,500 each.  Other courts in this District have

approved greater awards than requested here.  See, e.g., Rausch v. Hartford Fin. Servs. Grp.,

2007 WL 671334 (D. Or. Feb. 26, 2007) (finding an incentive award of $10,000 reasonable,

when awards to unnamed class members were as little as $150).  Ms. Anderson is the only class

member to object to the requested service awards, although in her filing she objects to awards of

$7,500, which is not the amount actually requested.  Based on the factors above, the Court finds

the requested service awards reasonable.

## IV.   Motion to Intervene is Denied

Intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure shall be

permitted when an applicant claims an interest which may, as a practical matter, be impaired or

impeded by disposition of the pending action and that interest is not adequately represented by

existing parties.  See Fed. R. Civ. P. 24(a)(2).  To intervene under Rule 24(a), courts apply a four

prong test: "(1) the application must be timely; (2) the applicant must have a 'significantly

protectable' interest relating to the transaction that is the subject of the litigation; (3) the applicant

must be so situated that the disposition of the action may, as a practical matter, impair or impede

the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately

represented .... " See League of United Latin Am. Citizens (LULAC) v. Wilson, 131 F.3d 1297,

1302 (9th Cir. 1997). Alternatively, permissive intervention is governed by Rule 24(b)(1)(B),

which allows the court to permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion [under that rule] the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b)(3).

In considering both intervention as of right and permissive intervention, other district courts have denied motions to intervene in class actions when there were alternatives open to the proposed intervenors that would be less disruptive to the proceedings and to the interests of the settling parties, such as filing objections, appearance at a fairness hearing, or opting out of the settlement. See, e.g., Davis v. J.P. Morgan Chase & Co., 775 F. Supp. 2d 601, 605 (W.D.N.Y. 2011); In re Charles Schwab Corp. Sec. Litig., 2011 WL 633308 (N.D. Cal. Feb. 11, 2011); Bergman v. Thelen LLP, 2009 WL 1308019 (N.D. Cal. May 11, 2009).

In this case, the proposed intervenor, Chris Anderson, has filed an objection, which was heard and considered by the Court at the fairness hearing on August 13, and it has continued to be given consideration here. In addition, the proposed intervenor had the opportunity to opt out of the action and pursue her claims in the parallel action filed in the District of Washington, as done by Mr. Sifferman. Finally, Ms. Anderson may continue to protect her interests without intervention, as the Supreme Court has held that "nonnamed class members . . . who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." Devlin v. Scardelletti, 536 U.S. 1, 14, 122 S. Ct. 2005, 2013, 153 L. Ed. 2d 27 (2002). Thus, intervention is not appropriate in this case.

IT IS HEREBY ORDERED that:

1. The Court approves the terms of the Settlement Agreement as fair, reasonable, adequate, and in the best interests of the Class, and directs consummation of all of its terms and

provisions. Funding of the settlement by Defendants has occurred and distribution of those funds shall proceed according to the terms of the Settlement Agreement.

2.  The Settlement Agreement shall be binding on Defendants, Plaintiffs, and all Class Members who have not been excluded pursuant to the Settlement Agreement. One individual, Greg Sifferman, has excluded himself pursuant to the terms of the Settlement Agreement.

3.  The Court dismisses the Lawsuit with prejudice. Upon the entry of this Order, all Class Members who have not opted out of the Settlement shall be deemed to have, and by operation of the Final Order and Judgment shall have, released the Released Claims. Class Members who have not excluded themselves from the Settlement are hereby enjoined from pursuing, or seeking to reopen, Released Claims against the Sterling Entities.

4.  The Court dismisses without prejudice the claims of Greg Sifferman who has properly and timely excluded himself in full accordance with the procedures set forth in the Settlement Agreement.

5.  Proposed intervenor Chris Anderson's Motion to Intervene is DENIED.

6.  Plaintiffs' Motion for Attorney's Fees, Expenses, and Service Awards is GRANTED as follows:

    a.  An award of twenty-five percent (25%) of the Settlement Fund, or $343,750, shall be paid from the Settlement Fund to the firm of Rowdy Meeks Legal Group LLC as attorneys' fees;

    b.  An award of costs and expenses of $11,533.49 shall be paid from the Settlement Fund to the firm of Rowdy Meeks Legal Group LLC;

c.  $16,000 shall be paid from the Settlement Fund for administration of the

  settlement to BMC Group, the Settlement Administrator; and

d.  Service payments of $2,500 each shall be paid from the Settlement Fund to

  Named Plaintiffs Michael DuBeau, David DuBeau, and Corey Gile.

7.  Without affecting the finality of the Final Order and Judgment in any way, the Court

reserves continuing and exclusive jurisdiction over the parties, including all Class

Members, regarding the execution, consummation, administration, and enforcement of

the terms of the Settlement Agreement.


ORDERED and DATED this _____28_____ day of August, 2013.


_____
MARK D. CLARKE
United States Magistrate Judge